DRELLA, Administrator, Appellant, vs. CONNOR LUMBER & LAND COMPANY, Respondent.

*December 12, 1913—January 13, 1914.*

*Master and servant: Death of employee: Unsafe working place: Warning: Felling of trees: Extraordinary accident: Direction of verdict.*

On a cold winter day plaintiff's intestate, about seventeen years of age, was engaged with another sawyer, two years older, in felling a maple tree which stood, leaning slightly to the west, near the foot of a westerly slope. As it was about to fall, he walked eastward about eight feet from the tree. In falling, the top of the maple struck a birch tree which stood more than forty-four feet distant towards the west and down the slope, bent it to the west, and then rolled off from it. The birch tree, when released, whipped back, broke off about six feet from the ground by reason of a defect unknown to defendant or to deceased, and the whole tree was thrown eastward so that its top struck and killed the deceased. No other trees of any size were standing near. The deceased had had some experience in the woods and in sawing, and his companion had

7

worked about twelve months as a sawyer. *Held*, that a verdict for defendant was properly directed, it being evident that the place was as free from danger as the nature of the employment would reasonably permit, that defendant exercised ordinary care in sending the deceased to cut the tree, and that the accident was so extraordinary that it could not be said that defendant ought to have anticipated it and to have warned the deceased of the danger.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Action by the administrator of the estate of John Drella, deceased, to recover damages for the death of said deceased, which occurred on January 6, 1909, and claimed to have been caused by the negligence of the defendant. Near the bottom of the westerly slope of a hill about twenty-five feet high stood a maple tree twenty-two inches in diameter, about ninety feet high, fifty-three feet thereof being the top. It leaned slightly towards the west. Forty-four feet and five inches a little south of west of it, and at a level five and one-half feet below that of the maple, stood a birch tree about thirteen inches in diameter. On a cold winter's day the deceased, who was about seventeen years of age, was sent with his brother, about nineteen years of age, to saw two birch trees and the maple in question left standing near the bottom of the westerly slope of the hill. The two birch trees were in a northwesterly direction from the maple and had been felled before the maple was cut. There were no other trees of any size in the neighborhood where the maple stood. In cutting it the deceased and his brother intended to have it fall in a westerly direction. According to instructions given by the foreman, they notched it deeply on the west side to prevent it splitting, and when it was about to fall the deceased walked straight east about eight feet from the tree. The top of the maple struck the birch tree first mentioned, bent it towards the west, then rolled off from it, and as the birch tree was released it whipped back, broke about six feet

from the bottom, and the whole tree thus broken off was thrown eastward so that the top thereof struck the deceased and killed him.

A number of grounds of negligence are alleged in the complaint, but the only grounds the evidence would tend to sustain are that the defendant was negligent in failing to warn the deceased of the danger of the maple striking the birch tree and that the limbs thereof or the tree itself might be thrown back so as to injure him, and that he was not given a safe place in which to work. The deceased had worked in the woods during the winter of 1907 sawing part of the time. During the winter of 1908 he worked from ten to twenty days sawing. In 1909 he had worked from November 16th until the time of the accident, sawing most of the time. His brother, who was sawing with him, had sawed about twelve months in all. The evidence showed that up to the time of the accident they had performed their work in a satisfactory manner. At the close of the testimony the court granted a motion to direct a verdict for the defendant. From a judgment entered accordingly the plaintiff appealed.

For the appellant the cause was submitted on the brief of *Eberlein & Eberlein.*

For the respondent there was a brief by *Goggins & Brazeau,* and oral argument by *T. W. Brazeau.*

VINJE, J. If the defendant was guilty of no actionable negligence the trial court properly directed a verdict in its behalf. It is evident from the situation existing at the time the maple was cut that the place was as free from danger as the nature of the employment would reasonably permit, and that the master exercised ordinary care in sending the deceased to cut the tree. In comparison with places in which trees ordinarily have to be cut in logging, the one in question was unusually free from danger. No tree of any size stood within forty feet of it. The birch that broke was over forty-

four feet away and located further down the slope. In no view of the situation can defendant be said to have furnished an unsafe place in which to cut the maple.

Should the deceased have been warned of the likelihood of the maple falling on the birch and of the latter breaking in such a way as to be thrown back and injure him? The ordinary and usual result of a tree the size and length of the maple falling upon the birch would be to completely crush it, or strip its branches, bearing everything to the ground. The accident in question was so unusual and so extraordinary in its nature that no ordinarily careful man could be held to reasonably anticipate the result that followed. True, no one can tell where limbs may be thrown when a tree is felled in the woods, especially on a cold winter day when they are frozen. But this fact was as well known to the deceased as it was to his employer. No one would anticipate that limbs from the birch would be thrown back a distance of over forty-four feet even if the top of the maple struck it, much less that the whole tree itself would be broken off and thrown back far enough to injure deceased where he stood. The evidence shows there was a defect on the west side of the birch tree where it broke that was unknown to both the defendant and the deceased at the time the maple was cut. But, aside from this defect, it must be held that deceased met his death by reason of a pure accident for which no one was to blame. The trial court therefore properly directed a verdict for the defendant.

*By the Court.*—Judgment affirmed.

Barnes, J., took no part.